UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNTIED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO. 3:15-cr-00056-1 |
|  | ) | JUDGE CRENSHAW |
| WALTON MICHAEL WAND, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

An indictment charges Walton Michael Wand with three counts of conspiracy to unlawfully produce and issue Tennessee driver's permits in violation of 18 U.S.C. § 1028(f) and one count of soliciting and accepting bribes in violation of 18 U.S.C. § 666(a)(1)(B). Wand has filed two motions to suppress.[1] (Doc. Nos. 124 and 128.) First, Wand moves to suppress evidence of prior employment-related disciplinary acts pursuant to rule 404(b). (Doc. No. 124 at 1.) In response, the Government states that it does not currently "anticipate introducing evidence that could be classified as strictly Rule 404(b) evidence. Defendant will be promptly noticed should the Government become aware of such evidence." (Doc. No. 131 at 2.) Accordingly, Wand's Motion to Suppress Evidence of Prior Acts Pursuant to Rule 404(b) (Doc. No. 124) will be **DENIED AS MOOT WITHOUT PREJUDICE** to re-file if the Government declares its intent to use evidence of crimes, wrongs, or other prior acts at trial.

Second, Wand moves to suppress the existence, transcript, and results of an August 26, 2010 Tennessee Department of Safety ("TDOS") meeting. (Doc. No. 128.) The Court held a

---

[1] Wand has also filed a motion to amend his second motion to suppress (Doc. No. 128) to correct dates in paragraphs one and two (Doc. No. 137) that will be **GRANTED**.

hearing on Wand's motion on February 9, 2017. For the reasons discussed herein, Wand's motion (Doc. No. 128) will be **DENIED**.

## I. Factual and Procedural Background

According to the Indictment, Wand was an employee of the Tennessee Department of Safety at all times relevant to this action. (Doc. No. 1 at 1 (Indictment).) Subject to Tennessee laws and regulations, Wand's duties included processing applications for Tennessee driver's licenses, administering tests to license applicants, and approving and issuing licenses. (Id.)

The Indictment charges that Wand solicited and accepted money for producing and issuing Tennessee driver's licenses to unauthorized applicants between about August 7, 2009 through August 4, 2010. (Id. at 1-2.) The Indictment also charges that Wand conspired to unlawfully produce and issue Tennessee driver's permits to applicants that had not passed required tests and exams between about April 28, 2010 through May 6, 2010; March 3, 2010 through May 10, 2010; and April 27, 2010 through May 11, 2010. (Id. at 2-8.)

At 9:40 a.m. on August 12, 2010, Wand signed a form titled "Admonition of Rights" and checked a box reflecting that he read and understood the form and that he was "willing to make a statement and answer questions at this time." (Suppression Hearing Ex. 4.) The form was also signed and witnessed by a Sergeant Johnson that Wand believed to represent TDOS. (Id.; Doc. No. 144-1, Wand Aff. at ¶ 2). The form stated, in full:

> I wish to advise you that you are being questioned as part of an official investigation of the Tennessee Department of Safety. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for duty.
>
> You are entitled to all the rights and privileges guaranteed by the laws and the constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself.

> I further wish to advise you that, if you refuse to answer or not to answer questions truthfully relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the employment of the Tennessee Department of Safety.
>
> If you do answer these questions, neither your statements nor any information or evidence which is gained by reason by such statements can be used against you in any subsequent criminal proceeding; however, these statements may be used against you in relation to subsequent departmental charges. This document is executed by a duly appointed representative of the Commissioner of the Tennessee Department of Safety.

(Suppression Hearing Ex. 4.)

At 11:40 a.m. on August 12, 2010, Wand signed a form and checked a box reflecting that he wished to attend a "minimum due process discussion" ("MDP discussion") regarding allegations that he improperly issued Tennessee driver's permits on May 11, 2010. (Doc. No. 132-1 (Minimum Due Process Discussion Form); Doc. No. 132-2 at 5-7 (Transcript of Proceedings).)

At the hearing on February 9, 2017, the Government called Deborah Martin, a TDOS attorney, whose duties included handling personnel matters. (Doc. No. 139 (Exhibit and Witness List).) Ms. Martin explained that the TDOS disciplinary process began when a complaint against an employee was given to the TDOS Office of Professional Responsibility ("OPR") for investigation. OPR informed the employee's supervisor of the results of the investigation, and the supervisor recommended disciplinary action to the TDOS Commissioner. Ms. Martin explained that, when a supervisor recommends termination, the law affords the employee a right to an MDP discussion. Ms. Martin testified that the MDP discussion is not an administrative hearing, and described it as a discussion between the employer and employee where the employee has the opportunity to tell the employer why the recommended disciplinary action (termination in the case of Wand) is not appropriate. The employee must be notified of the right to attend an MDP discussion, but is not required to attend the MDP discussion.

Ms. Martin testified that Wand was not required to make a statement at his MDP discussion and that he would not have suffered any adverse effects if he chose not to make a statement. Ms. Martin explained that there were no findings of fact made during or immediately after the MDP discussion. Ms. Martin explained that in the context of an MDP discussion, the term "charges" refers to violations that TDOS determined the employee committed rather than criminal charges.

On cross examination, Ms. Martin testified that if Wand did not request an MDP discussion, the disciplinary charges would be automatically accepted. On redirect, Ms. Martin testified that the investigation stage of a disciplinary action is distinct from the MDP discussion, and that the investigation is complete at the time of the MDP discussion. Ms. Martin explained that the "Admonition of Rights" form signed by Wand is related to the investigation stage, and does not apply to the MDP discussion. On questioning by the Court, Ms. Martin testified that the investigation stage should have been completed by the time Wand signed the "Admonition of Rights" and MDP discussion request forms on August 12, 2010. According to Ms. Martin, the "Admonition of Rights" form is usually signed months before an employee is presented with a MDP discussion request form. Ms. Martin did not know why Wand signed the "Admonition of Rights" and MDP discussion request forms on the same day.

On August 26, 2010, Wand appeared at the MDP discussion with Lisa Chapman, a non-attorney representative. (Doc. No. 132-2 at 3-4.) Director Kenneth Birdwell conducted the discussion and Ron Crockarell, a sergeant with the Office of Professional Responsibility ("OPR"), was present to read the disciplinary charges against Wand. (Id. at 3.) Others present to observe the hearing were District Supervisor Amy Crews, OPR Lieutenant Larry Lewis, TDOS attorney Deborah Martin, Human Resources employee Susan Cook, and Driver Services employee Wanda Adams. (Id.)

At the beginning of the MDP discussion, Director Birdwell explained to Wand that the discussion was being held pursuant to the Rules of the Tennessee Department of Human Resources, and Sergeant Crockarell read the rule governing MDP discussions. (Id. at 4-5.) Sergeant Crockarell then read the following disciplinary charges against Wand:

> Walton Wand, on May 11th, 2010, you issued a Class D Learner Permit to Demian Fenhas Mentias. Fellow Examiner Christine Omoregie graded Mr. Mentias' knowledge test and Mr. Mentias had failed it. Examiner Omoregie attempted to collect the $2.00 fee for the failed application and when she brought up Mr. Mentias on the computer, it showed you had already issued Mr. Mentias a learner's permit before the test was graded. Ms. Omoregie brought this to your attention and you advised her you would correct it. Ms. Omoregie later reviewed Mr. Mentias' record to see if you had corrected it and you had not. After it was pointed out to you that Mr. Mentias had failed the knowledge test, you purposely processed another application on Mr. Mentias and issued him a valid learner permit. In the time frame between the first and second application on Mr. Mentias, you issued another Class D Learner Permit to Ahmad Azaiza. An inspection of that application revealed Mr. Azaiza also failed the knowledge test. The photographs of Mr. Mentias and Mr. Azaiza are the same on both licenses.
>
> An examination of other applications from that day revealed that you had processed three more applications where the individuals had failed the knowledge test and you issued them a valid learners permit. Also there was one other application from that date that revealed you had let an applicant retake the knowledge test after failing it the day before, which is clearly a violation of the required seven-day waiting period. In total, you issued six valid learner permits to applicants that should not have received them.
>
> Walton Wand, you have received three prior suspensions on November 23rd, 2007; March 3rd, 2008; and September 23rd, 2009 for failing to follow Departmental policies and procedures. These three suspension were a total of 23 days off without pay. Your current actions show you have failed to respond to prior discipline in a positive manner. Therefore, this recommendation for termination is based on progressive discipline after the prior suspensions.
>
> Your lack of professionalism and regard for policies and procedures will not be tolerated. Your actions have jeopardized the integrity of the Driver Services Division and the dedicated employees who work hard every day to maintain an ethical and harmonious work environment.

(Id. at 6-9.)

Director Birdwell asked Wand if he wished to respond to the charges, and Wand replied:

> Yes. I'd like to say that the charges are not true. I follow my responsibility and my job to the utmost as to what I'm supposed to do. I admit that I made some mistakes, but that's the only thing that I've seen that I fell [sic] like I've probably done wrong. But other than that, I just feel like these charges are not true. That's all I have to say.

(Id. at 8.) Director Birdwell then asked Wand if he wanted to make any other comments, and Wand replied:

> Yes. . . . I feel like I'm being singled out on this situation with other examiners. We all make mistakes there from time to time and it was brought to my attention through the interview about these applicants and it showed that it could have been a human error. I explained to the officer at the time when I was interviewed about these applicants and one or two of them I don't even recall about them. I feel that my job -- I feel like I should be able to keep my job. I understand that I made human errors and made mistakes because we do process a lot of people. Things do happen. I feel like termination is not the basis for this -- for these actions. I can understand that I can, you know, even serve some discipline time or be retrained on my job or something to that effect. But I just -- I feel that I followed the job and the standards. There was a mistake about the two people that got mixed up and I corrected my mistakes. And I just -- I just don't feel that it warrants that I should be terminated from my job.

(Id. at 9-10.)

Director Birdwell then stated, "I will take this case and all the evidence and statements under advisement. The appointing authority, Commissioner Dave Mitchell, will make the decision and render it to you within 10 working days." (Id. at 10.) The Commissioner ultimately upheld the supervisor's recommendation to terminate Wand's employment.

## II. Analysis

Wand seeks to suppress the existence, statements, and results of the August 26, 2010 MDP discussion and argues: first, that Rule 403 of the Federal Rules of Evidence requires suppression because the disciplinary charges against Wand read by Sergeant Crockarell would unfairly prejudice the jury; second, that the Fourth Amendment requires suppression because a jury could believe that Wand's statements were admissions that he did something wrong; and third, that the

6

Fifth Amendment requires suppression because the TDOS "Admonition of Rights" form gave Wand the impression that there would not be any criminal charges against him when he requested the MDP discussion.

    A.    **Federal Rule of Evidence 403**

Rule 403 of the Federal Rules of Evidence provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." United States v. Newsom, 452 F.3d 593, 603 (6th Cir. 2006) (quoting United States v. Bonds, 12 F.3d 540, 567 (6th Cir. 1993)). The Court has broad discretion "in determining the proper balance" under Rules 401, 402, and 403. United States v. Quinn, 230 F.3d 862, 867 (6th Cir. 2000) (citing United States v. Feinman, 930 F.2d 495, 499 (6th Cir. 1991)).

Here, the MDP discussion is clearly probative because the subject of the discussion is some of the same conduct alleged in the Indictment. Wand argues that Sergeant Crockarell's reading of the disciplinary charges at the MDP discussion could, therefore, cause the jury to believe that he has already been found guilty of the criminal charges in the Indictment. Yet, this potential prejudice does not require exclusion, as there is no finding of guilt or conclusion in the MDP discussion transcript. Indeed, Director Birdwell concluded the MDP discussion by stating, "I will take this case and all the evidence and statements under advisement. The appointing authority, Commissioner Dave Mitchell, will make the decision and render it to you within 10 working days."

7

(Doc. No. 132-2 at 10.) The fact that TDOS decided to terminate Wand is not probative of the conduct alleged in the Indictment and will be excluded.

The Court can sufficiently mitigate potential prejudice in this context through appropriate jury instructions. First, the Government does not oppose redacting and refraining from referring to portions of the MDP discussion transcript on Wand's prior employment suspensions by TDOS. Second, the Court may instruct the jury that the disciplinary charges read by Sergeant Crockarell during the MDP discussion is not proof that he engaged in the conduct alleged in the Indictment. Third, the Court may instruct the jury that whether Wand was terminated as a result of the disciplinary charges in the MDP discussion is not relevant to the conduct alleged in the Indictment. Juries are presumed to follow the court's instructions. United States v. Cunningham, 679 F.3d 355, 383 (6th Cir. 2012) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Wand's motion to suppress the MDP discussion under Rule 403 of the Federal Rules of Evidence will therefore be denied.

### B. Fourth Amendment

At the February 9, 2017 hearing, Wand's counsel also argued that a jury could view Wand's statements at the MDP discussion as an admission of wrongdoing. The Fourth Amendment proscribes unreasonable searches and seizures. Scott v. United States, 436 U.S. 128, 137 (1978). Statements resulting from impermissible seizure under the Fourth Amendment may be suppressed in some circumstances. See United States v. Stepp, 680 F.3d 651, 667-68 (6th Cir. 2012). Here, however, Wand requested the MDP discussion and attended it voluntarily. Wand was therefore not "seized" in the Fourth Amendment sense when he appeared at the MDP discussion. See id. at 668 ("[N]one of [the defendant's] statements were the fruit of an unlawful search or seizure, because there was no unlawful search or seizure in this case.") (citing Wong Sun v. United States,

371 U.S. 471, 485-86 (1963)). Further, Wand's statements at the MDP discussion were not admissions regarding the criminal charges in the Indictment or the disciplinary charges read by Sergeant Crockarell. Although Wand acknowledged that he "made some mistakes," he clearly stated, "I'd like to say that the charges are not true" and "I just feel like these charges are not true." (Doc. No. 132-2 at 8.) Thus, Wand's motion to suppress the MDP discussion under the Fourth Amendment will be denied.[2]

### C. Fifth Amendment

Finally, Wand argues that the MDP discussion should be suppressed because the TDOS "Admonition of Rights" form is actually an agreement not to prosecute him. (Doc. No. 144 at 2.) As stated above, the form contained the following disclaimer:

> If you do answer these questions, neither your statements nor any information or evidence which is gained by reason by such statements can be used against you in any subsequent criminal proceeding; however, these statements may be used against you in relation to subsequent departmental charges. This document is executed by a duly appointed representative of the Commissioner of the Tennessee Department of Safety.

(Suppression Hearing Ex. 4.) Wand and a Sergeant that Wand believed to represent TDOS signed the form on August 12, 2010—two hours before he signed the form requesting an MDP discussion. At the February 9, 2017 hearing, TDOS attorney Deborah Martin testified that the "Admonition of Rights" form signed by Wand applied to evidence gathered during the OPR investigation, and did not apply to the MDP discussion. Ms. Martin also testified, however, that the "Admonition of

---

[2] To the extent that Wand argues that his statements at the MDP discussion should be suppressed because he "had a right to remain silent" (Doc. No. 128 at 2), the Court disagrees. Wand was not subjected to "custodial interrogation" because he requested and attended the MDP discussion voluntarily, and Wand was not coerced to make a statement. See United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998) ("[I]n order for Miranda to apply, the suspect must either be actually taken into custody or the restraint on his freedom must rise to the level associated with a formal arrest.") (citing California v. Beheler, 463 U.S. 1121, 1125 (1983)).

9

Rights" form is usually signed months before an employee is presented with a MDP discussion request form. She did not know why Wand signed both forms on the same day in this case.

The Due Process Clause of the Fifth Amendment requires "fundamental fairness" in agreements between defendants and the government. See United States v. Streebing, 987 F.2d 368, 372 (6th Cir. 1993) (collecting cases). Thus, "promises made during plea-bargaining and analogous contexts [must] be respected" where certain conditions are met. Id. However, the governmental agent must have authority to make the promise and the defendant must rely to his detriment on the promise. Id. (citing Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985)).

Here, even if Wand believed that his statements at the MDP discussion were made pursuant to the disclaimer on the "Admonition of Rights" form, there is not any evidence that the executing TDOS official had "either actual or apparent authority, as agents of the federal government, such that the United States would be bound to an agreement between the Defendant and state authorities." United States v. Handshoe, No. 08-32-ART, 2009 WL 223854, at *2 (E.D. Ky. Jan. 29, 2009) (citing United States v. El-Sadig, 133 F.Supp.2d 600 (N.D. Ohio 2000)). See also Streebing, 987 F.2d at 373 ("[B]ecause the FBI agent lacked any actual or apparent authority to make the alleged promise not to prosecute, the District Court did not err in failing to dismiss the indictment."). Further, as stated above, Wand "did not rely to his detriment upon the alleged promise not to prosecute." See id. Wand's statements at the MDP discussion were not admissions of guilt to the disciplinary charges or the conduct alleged in the Indictment. Wand merely acknowledged that he made mistakes.

The TDOS "Admonition of Rights" was not fundamentally unfair. Wand's motion to suppress the MDP discussion under the Due Process Clause of the Fifth Amendment will therefore be denied.

## **IV. CONCLUSION**

For the reasons set forth herein, Wand's second Motion to Suppress Evidence (Doc No. 128) will be denied. An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE